FILED
2009 Jan-30  PM 08:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES WILLIAMS, by and through** | ) | |
| **his next friend, JAMES HOLDEN;** | ) | |
| **and PATRICIA WALTON;** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:08-cv-00262-UWC** |
| **BLAKE DORNING, individually and in** | ) | |
| **his official capacity as Sheriff of** | ) | |
| **Madison County, Alabama,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before this Court is Defendant Blake Dorning's Motion to Dismiss (Doc. 43) and Plaintiffs James Williams, James Holden, and Patricia Walton's Motion for Leave of Court to Amend the Complaint (Doc. 56.)[1]

For the reasons outlined herein, the Motion to Amend will be denied; and the Motion to Dismiss will be granted.

## I. BACKGROUND

### A. Procedural Status

---

[1]Plaintiffs have also filed a Motion to Produce, Doc. 76, which will be denied in light of the disposition of th other motions.

Plaintiffs James Holden, on behalf of his friend, James Williams ("Williams"), and Patricia Walton ("Walton") commenced this action on February 13, 2008, seeking equitable and compensatory damages against Defendants Madison County Sheriff's Department, the City of Huntsville, and Blake Dorning ("Dorning"), individually and in his official capacity as Sheriff of Madison County, pursuant to 42 U.S.C. § 1983, Alabama state law, and the Consent Order entered in *Marshall, et al. v. Whisante, et al.*, No. 78-5010 (N.D. Ala. Nov. 9, 2000) ("Consent Order").

Plaintiffs filed an amendment to the complaint on February 25, 2008, which added a negligence count against the City of Huntsville.. Doc. 8.

The Defendants then filed motions to dismiss.  The Court granted the motions, and dismissed the non-entity Madison County Sheriff's Department and City of Huntsville as parties. (Doc. 39.)  The Court treated Sheriff Dorning's motion as a motion for a more definite statement,  and treated as such, granted the motion. *Id.*

he Court ordered the Plaintiffs to file an amended complaint that specified, *inter alia*, 1) each act or omission of the Defendant Sheriff which gave rise to their respective causes of action, together with the date(s) of each such act or omission, and 2) the specific constitutional rights allegedly violated by the Defendant.

Subsequently, Plaintiffs filed an amended complaint. Doc. 42.In the amended complaint, Plaintiffs' counsel named Madison County and the Madison County Jail

and "All Officers, agents, servants, or employees and Assigns" as additional Defendants; but did not comply with the Court's Order of April 15, 2008. Doc. 42.

Sheriff Dorning then filed the instant Motion to Dismiss. Doc. 43.

Plaintiffs' then  filed the instant Motion for Leave to Amend the Complaint, Doc. which seeks to add Holly Martin ("Martin") as a plaintiff. Doc. 56.

### B. Substantive Facts

Williams was incarcerated at Madison County Detention Facility ("MCDF") in September 2007.  Upon incarceration, Williams had at least two prescriptions, one of which was an anti-rejection medication to treat a liver transplant.

Williams and his family told jailers that Williams required daily medication and other medical care.  In addition, Williams told a doctor at MCDF that he was having pains in his side and coughing blood.  Williams was given no treatment for these problems.

Williams was placed in the regular cellblock instead of the medical area cell block.  Also, Williams, has been denied medication, received his medication late, received improper dosages, and has not received proper medical care such as blood testing to monitor his liver.

While at MCDF, Williams was charged for medical treatment, diagnosed with psychiatric problems, and given some medication.  A doctor at MCDF, Dr. Arthur

Williams, knew about Williams' liver transplant but no MCDF employee made sure Williams received his appropriate check ups or treatments. Williams did receive anti-rejection drugs, which were adjusted, but it is not clear whether a liver specialist was involved in the decision to alter the anti-rejection drugs.

Walton has been an inmate at MCDF more than once. During her most recent incarceration Walton asked for medical care and Walton's family delivered Walton's prescription medication to MCDF. However, Walton neither received her prescription medication nor received proper medical care.

In addition, Walton has bipolar disorder but was never screened for mental health.

Lastly, Walton is forced to take heart medication despite the nonexistence of heart problems.

Martin became an inmate at MCDF in March 2008. Martin has mental illness and has a prescription. Prior to being incarcerated at MCDF, Martin had been confined at Crestwood hospital. When Martin entered MCDF she had cuts all over her arms. At MCDF, Martin asked to see a doctor. Martin has seen a psych nurse but no doctor. After the psych nurse, there has been no followup and Martin has not received her prescribed medicine.

## II. THE CONTROLLING LAW AND ANALYSIS

A. Plaintiffs' Request for Leave of the Court to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that: "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  A "district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Insurance Co. Of America,* 367 F.3d 1255, 1262-63 (11th Cir. ) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Motion for leave to add another party will be denied, without prejudice. Plaintiff's counsel has failed to comply with the Court's order requiring a more definite statement of the claims of the existing Plaintiffs. Having failed to do so, he will not be permitted to bring yet another plaintiff into this case

B. Standard for a Rule 12(b)(6) Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, "all of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529  F.3d 1027, 1037 (11th Cir. 2008).  "A motion to dismiss does not test the merits of a case, but only requires that the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above the speculative level." *Id.* (internal quotation marks omitted).

C. Relief Sought Under the Consent Order

Plaintiff  asks for relief based on the Consent Order in the prison conditions, *Marshall, et al.*, No. 78-5010.  Sheriff Dorning maintains that only class counsel can bring a contempt action to enforce the Consent Order.

The Consent Order specifies how its terms are to be enforced.  Only class counsel are authorized to apply to the Court for enforcement of the Consent Order. *Marshall, et al.*, No. 78-5010 at ¶ 56 ("If defendant fails to comply with the substantive terms and conditions of this *Consent Order*, plaintiffs' counsel may apply to the Court for a finding of contempt or other appropriate relief.")

 Accordingly, Plaintiffs' claims for relief under the Consent Order are due to be dismissed without prejudice.

D. The Section 1983 Claims Against Sheriff Dorning
in his Official Capacity

Sheriff Dorning argues that he is entitled to sovereign immunity under the Eleventh Amendment in his official capacity because he is an executive officer of the State of Alabama.  He is correct. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997);  *Carr v. City of Florence,  Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990).

Therefore, the claim against Sheriff Dorning in his official capacity as Sheriff

of Madison County is due to be dismissed with prejudice.

E. The Section 1983 Claims Against Sheriff Dorning in his Individual Capacity

Sheriff Dorning argues that the doctrine of qualified immunity shields him from liability in his individual capacity; and that Plaintiffs have not met the heightened pleading standard required when a defense of qualified immunity is raised.

In this circuit, a heightened pleading standard applies in Section 1983 cases when the defense of qualified immunity is raised. *Danley v. Allen*, 2008 WL 3874672, at *11 (11th Cir. August 22, 2008). In these cases, "vague and conclusory" allegations will be dismissed. *Id.* To meet the heightened pleading standard, the "relevant facts must be plead with 'some specificity.'" *Id.*

When a government official is sued in his individual capacity for performing discretionary functions he is protected from liability unless he violates a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003) (quoting *Lassiter v. Ala. A & M Univ., Bd. Of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)). A government official is acting within his discretionary authority if "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)

(quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

If a public official has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply. *Storck*, 354 F.3d at 1314. The Plaintiff must demonstrate that:

> (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?, and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established."

*Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A constitutional right is clearly established "by one or more of three sources: (1) a specific constitutional or statutory provision; (2) a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed; and (3) a case with similar facts that has already been decided by one of those courts." *Id.* at 11.

Plaintiff has sufficiently pled the violation of a clearly established constitutional right. *Danley*, 2008 WL 3874672, at *11 ("Earlier deliberate indifference decisions have stated that when jailers are aware of serious medical needs they may not ignore them or provide grossly inadequate care" (citing *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005); *McElligott v. Foley*, 182 F.3d 1248, 1256 (11th Cir. 1999))).

Under the Eighth Amendment, "deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain . . . This includes indifference manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." *Gary v. Modena*, 244 Fed. Appx. 997, 1000 (11 Cir. 2007) (internal citations and quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 87, 104-05 (1976)); *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (Under the Eighth Amendment, "prisoners have the right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide" (quoting *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)).  The Fourteenth Amendment provides the Eighth Amendment's protections to pretrial detainees. *Danley*, 2008 WL 3874672, at *3.

The Eighth Amendment is violated if there is deliberate indifference to a prisoner's serious medical needs. *Id.* at 8.  Prior to demonstrating deliberate indifference the plaintiff must show a serious medical need. *Id.*  If a serious medical need and deliberate indifference to that need are shown, then the plaintiff must prove causation between the deliberate indifference and the plaintiff's injury. *Id.*

There are at least two ways to show that a medical need is serious: (1) "a delay in treating the need worsens it"; or, (2) "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

Here, the Plaintiffs have each alleged a serious medical need because each has treatment mandated by a physician.

Williams alleges that a non-MCDF doctor and a MCDF doctor mandated treatment for Williams.

Walton alleges that she has prescription medicine.

Martin alleges she has prescription medicine, was hospitalized for physical and mental health problems, and has been seeing psychiatrists.

To demonstrate the defendant's deliberate indifference to the serious medical need, "a plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.*

The existence of a consent order for a prison is relevant to the deliberate indifference inquiry, but it may be just one factor in the inquiry. *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003). For gross negligence, a trier of fact may infer

deliberate indifference "[w]hen prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them."  *Danley*, 2008 WL 3874672, at *10 (quoting *Bozeman*, 422 F.3d at 1273).

Assuming the above elements are satisfied, Plaintiffs nonetheless must demonstrate supervisor liability of Sheriff Dorning, because supervisors are not liable for their subordinates on the basis of *respondeat superior* or vicarious liability. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  However, supervisors are liable when either "the supervisor personally participates in the alleged constitutional violation or when there is a casual connection between actions of the supervising official and the alleged constitutional violation."  *Id.* (citing *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

There are three established means of demonstrating the requisite casual connection.  First, a casual connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and [the responsible supervisor] fails to do so."  *Gonzales*, 325 F.3d at 1234 (quoting *Braddy*, 133 F.3d at 802)).  The history of widespread abuse must be "obvious, flagrant, rampant, and of continued duration, rather than isolated circumstances.  *Id.*  In *Danley*, 2007 WL 3874672, at *13, the Court found that the supervisors' knowledge of relevant abuse through reports, complaints, and personal

observation of jailers abuse, especially particular jailers, established a casual connection.

Second, a casual connection may be established "when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights." *Gonzales*, 325 F.3d at 1234-35 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)) (internal quotation marks omitted).

Third, a casual connection may be shown by "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzales*, 325 F.3d at 1235 (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993)).

Here, Plaintiffs do not allege a history of widespread indifference to serious medical needs by Madison County jailers or doctors.

While Plaintiffs allege that Sheriff Dorning's improper custom or policy resulted in Plaintiffs' mistreatment, they do not indicate in the amended complaints specifically what policy or custom caused the deliberate indifference. Plaintiffs merely make conclusory statements; nowhere do Plaintiffs state or describe the alleged custom or policy, and nowhere do Plaintiffs allege how the alleged custom

or policy resulted in Plaintiffs' mistreatment. *See Battise v. Sheriff of Broward County*, 261 Fed. Appx. 199, 202-03 (11th Cir. 2008).

Moreover, Plaintiffs do not allege specific facts which support an inference that Sheriff Dorning directed the jailers to act unlawfully or knew that the jailers would act unlawfully and failed to stop them from doing so." Again, Plaintiffs merely make conclusory statements.

Thus, Plaintiffs' section 1983 claim against Sheriff in his individual capacity is due to be dismissed without prejudice.

### F. Section 1983 Claim Against Madison County

A county may be subject to Section 1983 liability "for constitutional violations caused by its policies or customs." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality...A custom is a practice that is so settled and permanent that it takes on the force of law." *Newsome*, 431 F. Supp. 2d at 1205 (quoting *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005)). The county can not be held liable under respondeat superior. *Id*. at 1205-06.

There is no heightened pleading standard for section 1983 claims against a municipality. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Since its is settled Alabama law that the sheriff, not the county, is responsible for the operation of the county jail, Plaintiffs' Section 1983 claims against the County is due to be dismissed.

### CONCLUSION

For the reasons stated herein, the Plaintiff's Motion for Leave to Amend th Complaint will be denied. Sheriff Dorning's Motion to Dismiss will be granted.

U.W. Clemon
United States District Judge